IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KEVIN J. OLIVER and ERIC ROBERT TIPPETTS, individually and on behalf of all others similarly situated, | § § § § § | |
| v. | § § § | 1:14-CV-07794 |
| | § | Hon. James B. Zagel |
| DIRECTV, LLC, Defendant | § § | |

### PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT

KEVIN J. OLIVER and ERIC ROBERT TIPPETTS, individually and on behalf of all other persons similarly situated, bring this action against Defendant DIRECTV, LLC ("Defendant"), and allege, upon personal knowledge as to their own conduct, and upon information and belief as to the conduct of others, as follows:

### INTRODUCTION

1.      Plaintiffs bring this class action against Defendant DirecTV, LLC to secure redress because Defendant willfully violated the TELEPHONE CONSUMER PROTECTION ACT ("TCPA"), 47 U.S.C § 227, *et seq.* by causing unsolicited calls to be made to Plaintiffs' and other class members' cellular telephones through the use of an auto-dialer and/or artificial or pre-recorded or artificial voice message.

2.      Defendant made one or more unauthorized calls to Plaintiffs' cell phone using an automatic telephone dialing system ("ATDS") for the purpose of soliciting business from Plaintiffs.

1

3.      Defendant's conduct and actions violated the TCPA, for which Plaintiffs and the Class Members seek judgment against Defendant equal to $500.00 per violation, together with attorneys' fees, court costs, and treble damages (for knowing and/or willful violations).

## PARTIES

4.      Plaintiff KEVIN J. OLIVER is a citizen of the State of Illinois who resides in Naperville, DuPage County, Illinois.

5.      Plaintiff ERIC ROBERT TIPPETTS is a citizen of the State of Utah who resides in Lehi, Utah County, Utah.

6.      Defendant DIRECTV, LLC is a corporation organized under the laws of the State of California.  Defendant maintains its principle place of business at 2260 E. Imperial Highway, El Segundo, California 90245.  Defendant has been served with process but has not yet answered of otherwise appeared in this case.

7.      Whenever in this complaint it is alleged that Defendant committed any act or omission, it is meant that the Defendant's officers, directors, vice-principals, agents, servants, or employees committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendant or was done in the routine normal course and scope of employment of the Defendant's officers, directors, vice-principals, agents, servants, or employees.

## JURISDICTION & VENUE

8.      This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because the matter in controversy in this civil action exceeds the sum or value of $5,000,000.00, exclusive of interests and costs, and at least one member of the putative class is a citizen of a state different from Defendant.  Furthermore, Plaintiff Class consists of at least one

hundred members.

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

10.     Defendant is subject to general personal jurisdiction in this District because it has continuous and systematic contacts with this District.  Specifically, Defendant regularly conducts business in this District.  Defendant is also subject to specific personal jurisdiction in this District because its contacts with this District gave rise to the instant action.  Furthermore, the exercise of personal jurisdiction over Defendant in this District does not offend traditional notions of fair play or substantial justice.

## LEGAL BASIS FOR THE CLAIMS

11.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In doing so, Congress recognized that "[u]nrestricted telemarketing…can be an intrusive invasion of privacy…"  Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243 § 2(5) (1991) (codified at 47 U.S.C. § 227).

12.     Specifically, the TCPA restricts telephone solicitations (*i.e.,* telemarketing) and the use of automated telephone equipment. The TCPA limits the use of automatic dialing systems, artificial or prerecorded voice messages, SMS text messages, and fax machines. It also specifies several technical requirements for fax machines, autodialers, and voice messaging systems— principally with provisions requiring identification and contact information of the entity using the device to be contained in the message.

13.     In its initial implementation of the TCPA rules, the FCC included an exemption to its consent requirement for prerecorded telemarketing calls.  Where the caller could demonstrate an "established business relationship" with a customer, the TCPA permitted the caller to place pre-

recorded telemarketing calls to residential lines. The new amendments to the TCPA, effective October 16, 2013, eliminate this established business relationship exemption. Therefore, all pre-recorded telemarketing calls to residential lines and wireless numbers violate the TCPA if the calling party does not first obtain express written consent from the called party.

14.     As of October 16, 2013, unless the recipient has given <u>prior express written consent</u>, the TCPA and Federal Communications Commission (FCC) rules under the TCPA generally:

- Prohibits solicitors from calling residences before 8 a.m. or after 9 p.m., local time.

- Requires solicitors provide their name, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which that person or entity may be contacted.

- Prohibits solicitations to residences that use an artificial voice or a recording.

- Prohibits any call or text made using automated telephone equipment or an artificial or prerecorded voice to a wireless device or cellular telephone.

- Prohibits any call made using automated telephone equipment or an artificial or prerecorded voice to an emergency line (e.g., "911"), a hospital emergency number, a physician's office, a hospital/health care facility/elderly room, a cellular telephone, or any service for which the recipient is charged for the call.

- Prohibits autodialed calls that engage two or more lines of a multi-line business.

- Prohibits unsolicited advertising faxes.

15.     Furthermore, in 2008, the FCC held that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules." *In re Rules and Regulations Implementing the Telephone Consumer*

*Protection Act, Declaratory Ruling on Motion by ACA International for Reconsideration*, 23 FCC Rcd. 559, 565, ¶ 10 (Jan. 4, 2008); *Birchmeier v. Caribbean Cruise Line, Inc.*, 2012 WL 7062748 (Dec. 31, 2012).

16.     Accordingly, the entity can be liable under the TCPA for a call made on its behalf, even if the entity did not directly place the call.  Under those circumstances, the entity is deemed to have initiated the call through the person or entity.

## FACTUAL BACKGROUND AS TO PLAINTIFF OLIVER

17.     Between August 2, 2014 and September 11, 2014, Defendant contacted Plaintiff Oliver on his cellular telephone number *via* ATDS, as defined by 47 U.S.C. § 227(a)(1), four times without first obtaining Plaintiff's written consent.

18.     On August 2, 2014 at 4:58 p.m. central standard time, Plaintiff Oliver received a call on his cellular telephone assigned a number ending in 0434.

19.     Plaintiff Oliver's caller ID read "877-389-6582" as the call was incoming.  This number is assigned to Defendant.

20.     Plaintiff Oliver was not able to answer the call, and Defendant did not leave a message.

21.     On August 28, 2014 at 1:47 p.m. central standard time, Plaintiff Oliver received another call to his cellular telephone from 877-389-6582.

22.     Plaintiff Oliver was unable to answer the call, and Defendant did not leave a message.

23.     Plaintiff Oliver hoped Defendant would simply stop calling; however, Defendant called again on September 4, 2014 at 12:00 p.m.

24. Plaintiff Oliver was unable to answer the call, and Defendant did not leave a message.

25. Plaintiff Oliver called the number back with the intention of asking Defendant to stop calling.

26. He was greeted by a pre-recorded automated voice, which invited Plaintiff to leave a voicemail.

27. The automated voice identified the answering party as DirecTV.

28. Plaintiff Oliver had a contract with DirecTV but canceled his service in March of 2014, five months before he received the first illicit call from Defendant.

29. At the time of the calls, Plaintiff Oliver did not have a business relationship with Defendant, nor did Plaintiff Oliver owe a balance to Defendant.

30. Plaintiff Oliver was annoyed by the calls and wanted to tell Defendant to stop calling.

31. Defendant's call software did not provide Plaintiff Oliver the option of speaking with a live representative.

32. Plaintiff Oliver hoped Defendant would simply stop calling; however, Defendant called again on September 11, 2014 at 5:08 p.m.

33. Plaintiff Oliver was unable to answer the call, and Defendant did not leave a message.

34. On information and belief, Defendant's pre-recorded automated system had called Plaintiff Oliver on the three prior occasions.

35. On information and belief, and based on the circumstances of the previous calls, Defendant called Plaintiff Oliver using an ATDS.

6

36.     Plaintiff Oliver understood the purpose of Defendant's calls was to solicit business from Plaintiff Oliver.

37.     Plaintiff Oliver performed research and confirmed Defendant was in fact the owner of the number, and learned Defendant was calling to promote its products.

38.     Plaintiff Oliver also learned that many former customers had similar experiences with Defendant.

39.     On information and belief, Defendant maintains a list of former customers and periodically contacts these individuals to promote special rates for re-enrolling in one of Defendant's satellite television packages.

40.     Plaintiff Oliver was not interested in Defendant's offers, and the repetitive calls were unwanted and disruptive.

41.     Plaintiff Oliver electronically stored Defendant's number and a record of each call on his cellular telephone.

42.     Furthermore, Plaintiff Oliver's telephone records reflect 4 calls from "877-389-6582," which Plaintiff Oliver confirmed was associated with Defendant's business phone number.

43.     The telephone number Defendant called was assigned to a cellular telephone service for which charges incur for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

44.     Plaintiff Oliver pays the bill associated with the cellular telephone assigned the number ending in 0434.

45.     Plaintiff Oliver is the regular carrier and exclusive user of the cellular telephone assigned the number ending in 0434.

46.     Defendant's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

47.     Plaintiff Oliver did not provide Defendant prior express written consent to receive calls to his cellular telephone utilizing an ATDS or artificial or pre-recorded voice, pursuant to 47 U.S.C. § 227 (b)(1)(A).

48.     All calls Defendant made to Plaintiff Oliver violate 47 U.S.C. § 227(b)(1).

**FACTUAL BACKGROUND AS TO PLAINTIFF TIPPETTS**

49.     Between April 2013 and September 2014, Defendant contacted Plaintiff Tippetts on his cellular telephone number *via* ATDS, as defined by 47 U.S.C. § 227(a)(1), approximately 25 times without first obtaining Plaintiff's written consent.

50.     Plaintiff Tippetts received all calls as described above on his cellular telephone assigned a number ending in 5640.

51.     Plaintiff Tippetts caller ID read "877-389-6582" as each call was incoming.

52.     Plaintiff Tippetts spoke to a representative for Defendant on at least three occasions during the time Defendant was placing unwanted calls to his number.

53.     Every time Plaintiff Tippetts answered one of Defendant's calls, there was a momentary pause before a live representative of Defendant would begin speaking.

54.     Each time Plaintiff Tippetts answered Defendant's call, he was routed to a different "account manager;" he never spoke to the same individual twice.

55.     On each occasion during which Plaintiff Tippetts spoke to a representative of Defendant, the representative identified himself as an account manager and asked a series of questions related to Plaintiff Tippetts' prior cancellation of DirecTV service.

56.     Plaintiff Tippetts had a contract with DirecTV but canceled his service in April of 2013.

57. The purpose of each call from Defendant was to try to recruit Plaintiff Tippetts back to DirecTV as a customer.

58. Plaintiff Tippetts was not interested in returning as a customer of DirecTV, and he expressed that point each time he spoke to a representative of Defendant.

59. Plaintiff Tippetts told the representative during each call that he did not want to receive any more calls from Defendant.

60. Nonetheless, Plaintiff Tippetts received a number of calls from Defendant; each included the same aggressive sales pitch.

61. During the last conversation Plaintiff Tippetts had with Defendant, Plaintiff Tippetts told the representative he did not want to be called again and asked the representative if the company kept notes of the previous calls to Plaintiff Tippetts.

62. Defendant's representative admitted staff kept notes of previous calls, and then he abruptly hung up on Plaintiff Tippetts.

63. At the time of the calls, Plaintiff Tippetts did not have a business relationship with Defendant, nor did Plaintiff Tippetts owe a balance to Defendant.

64. Plaintiff Tippetts was annoyed by the calls and wanted Defendant to stop calling.

65. It was obvious to Plaintiff Tippetts that, although Defendant admitted to keeping notes of previous calls, the representatives did not review the notes before placing the call.

66. Based on Plaintiff Tippetts' experience and knowledge, Plaintiff Tippetts believed Defendant's call center was autodialing former customers' numbers at random, and Defendants' representatives were routed the calls before having the opportunity to review the call notes, if any existed.

67.     On information and belief, Defendant's automated system had called Plaintiff Tippetts on every occasion.

68.     On information and belief, and based on the circumstances of the all the calls, Defendant called Plaintiff Tippetts using an ATDS.

69.     Plaintiff Tippetts understood the purpose of Defendant's calls was to solicit business from Plaintiff Tippetts.

70.     Plaintiff Tippetts wanted to find a way to stop Defendant from calling, so Plaintiff Tippetts performed internet research to see if there was anything he could do.

71.     Plaintiff Tippetts learned many people had negative experiences with Defendant's telemarketing campaign.

72.     As part of his research, Plaintiff Tippetts entered the precise phone number from which Defendant had called him into an online search engine, and the search results included numerous online forums dedicated to comments regarding unsolicited calls from this same phone number.  The following are just a select few of those comments:

- "we are on the no call list and still get all these call from this number.  They should be fined for their offense."

- "Getting calls from (877) 389-6582 for the last 3 days…when I answer they hang up.  We also dropped Directv last month."

- "…I wish they would stop calling.  I have not answered since the first call.  I told them that I wasn't coming back.  If they keep calling I will sue them for harassment."

- "Yup, same thing here.  I cancelled DTV a few months ago simply due to their ridiculously obnoxious calls with offers to waste more money.  Now they're

10

harassing me on my cell phone. Just when I thought it was impossible to loathe them any more, they proved me wrong."

- "Answer, sometimes they talk & sometimes – they said nothing. Call multiple times a day."

- "I cancelled my service with them over a year ago, and continue to receive multiple calls to my cell phone PER DAY, even on weekends. I have made it clear multiple times that I do not wish to return as a customer as I already have another service. But these relentless people will not stop. Something needs to be done. This is harassment."

- "I've been getting calls from this number 3 or 4 times a day. Never anyone there."

- "I am getting calls with no response from this number…No answer. Just silence."

- "You don't get a customer back by harassing and irritating them!"

- "DirecTV is a big business that operates like some shady backroom brothel."

- "It's DirecTV, I dropped them a year ago due to price increases and lousy service, now because they have my damn number they are always calling trying to get me to come back, they are rude, ruthless morons!"

73.     Plaintiff Tippetts electronically stored Defendant's number and a record of each call on his cellular telephone.

74.     The telephone number Defendant called was assigned to a cellular telephone service for which charges incur for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

75.     Plaintiff Tippetts pays the bill associated with the cellular telephone assigned the number ending in 5640.

11

76.     Plaintiff Tippetts is the regular carrier and exclusive user of the cellular telephone assigned the number ending in 5640.

77.     Defendant's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1(A)(i).

78.     Plaintiff Tippetts did not provide Defendant prior express written consent to receive calls to his cellular telephone utilizing an ATDS or artificial or pre-recorded voice, pursuant to 47 U.S.C. § 227 (b)(1)(A).

79.     All calls Defendant made to Plaintiff Tippetts violate 47 U.S.C. § 227(b)(1).

80.     Plaintiffs have reason to believe Defendant has called, and continues to call, thousands of wireless telephone customers to market its products and services.

81.     In order to redress injuries caused by Defendant's violations of the TCPA, Plaintiffs, on behalf of themselves and a class of similarly situated individuals, bring suit under the TCPA, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited voice and text calls to cell phones.

82.     On behalf of the Class, Plaintiffs seek an injunction requiring Defendant to cease all wireless telemarketing and spam activities and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees.

## CLASS ACTION ALLEGATIONS

83.     Pursuant to Rules 23(b) and (c) of the FEDERAL RULES OF CIVIL PROCEDURE, Plaintiffs bring this action on their own behalf and on behalf of the proposed Plaintiff Class. Plaintiffs seek certification of a Plaintiff Class consisting of:

> All persons within the United States who were prior customers of Defendant, and Defendant or some person on Defendant's behalf, called the person's cellular telephone by using an automatic telephone dialing system, or using any other device that has the

12

capacity to dial numbers without human intervention, from October 16, 2013 to the date the Class is certified, where Defendant's records fail to indicate prior express written consent from the recipient to make such call.

84.     The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and its current or former employees, officers, and directors; (3) Plaintiffs' attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released.

85.     Plaintiffs do not know the number of members in the Class, but believe the Class members number in the tens of thousands, if not more.  This matter should therefore be certified as a Class Action to assist in the expeditious litigation of this matter.

86.     Plaintiffs and members of the Class were harmed by Defendant's acts in at least the following ways: Defendant, either directly or through agents, illegally contacted Plaintiffs and the Class members *via* their cellular telephones by using an ATDS, thereby causing Plaintiffs and the Class members to incur certain cellular telephone charges or reduce cellular telephone time for which Plaintiffs and the Class members previously paid, and invading the privacy of said Plaintiffs and the Class members.  Plaintiffs and Class members were damaged thereby.

87.     This suit seeks only damages, statutory penalties, and injunctive relief for recovery of economic injury on behalf of the Class, and it expressly is not intended to request any recovery for personal injury and claims related thereto.  Plaintiffs reserve the right to expand the Class definition to seek recovery on behalf of additional persons as warranted as facts are learned in

further investigation and discovery.

88.     The joinder of the Class members is impractical and the disposition of their claims in the Class action will provide substantial benefits both to the parties and to the Court.  The Class can be identified through Defendant's records or Defendant's agents' records.

89.     There is a well-defined community of interest in the questions of law and fact affecting Plaintiffs and the Plaintiff Class.  The questions of law and fact common to Plaintiffs and the Plaintiff Class predominate over questions affecting only individual members of the Plaintiff Class, and include, but are not limited to, the following:

> (a) Whether from October 16, 2013 to the date the Class is certified, Defendant contacted any member of the Class (other than calls made for emergency purposes or made with the prior express written consent of the called party) using any automatic dialing system to any telephone number assigned to a cellular phone service;
>
> (b) Whether the members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct; and
>
> (c) Whether Defendant and its agents should be enjoined from engaging in such conduct in the future.

90.     Plaintiffs assert claims that are typical of the Plaintiff Class based upon the conduct of Defendant, which is uniform across all Class Members.

91.     Injuries sustained by Plaintiffs and the members of the Plaintiff Class flow, in each instance, from a common nucleus of operative facts.  Defendant or its agents used an ATDS to contact Plaintiffs and the Plaintiff Class on their cellular telephones without prior express written consent.

92.     Plaintiffs are adequate representatives of the Plaintiff Class because his interests do not conflict with, and are not antagonistic to, the interests of the members of the Plaintiff Class they seeks to represent.  Plaintiffs will fairly and adequately represent and protect the interests of

the Plaintiff Class.

93.     Plaintiffs have retained attorneys who are competent and experienced in the prosecution of class litigation and other complex litigation.

94.     Plaintiffs and the members of the Plaintiff Class have all sustained injuries caused by Defendant's conduct.

95.     A class action is superior to other methods for the fair and efficient adjudication of the subject controversy.  Absent a class action, the members of the Plaintiff Class likely will find the cost of litigating their individual claims to be prohibitive, and will have no effective remedy at all.  Because of the relatively small size of the individual claims of the members of the Plaintiff Class, few members of the Plaintiff Class likely could afford to seek legal redress on their own. Absent a class action, members of the Plaintiff Class will continue to sustain damages, and Defendant's misconduct will proceed without remedy.

96.     The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication.  Additionally, Defendant has acted, and failed to act, on grounds generally applicable to Plaintiffs and the Plaintiff Class, requiring Court imposition of uniform relief to ensure compatible standards of conduct toward Plaintiffs and the Plaintiff Class.

97.     Adequate notice can be provided to the members of the Class directly using information maintained in Defendant's records or through notice by publication.

## FIRST CAUSE OF ACTION
### VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT
### 47 U.S.C. § 227

98. Plaintiffs re-allege and incorporates by reference each preceding paragraph as though set forth at length herein.

99. Defendant made unsolicited and unauthorized calls using an ATDS or pre-recorded voice to Plaintiffs' and the Class Members' cellular telephones for the purpose of marketing products and/or services to Plaintiffs and the Class Members.

100. Defendant made the calls without prior express written consent of the Plaintiffs and Class Members.

101. The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227, *et. seq.*

102. As a result of Defendant's violations of 47 U.S.C. § 227, *et. seq.*, Plaintiffs and the Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

103. Because Defendant had knowledge that Plaintiffs and the Class Members did not consent to the receipt of the aforementioned telephone solicitations, the Court should, pursuant to 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by the Plaintiffs and Class Members.

104. Plaintiffs and the Class Members are also entitled to and seek injunctive relief prohibiting such conduct in the future.

16

## ATTORNEY'S FEES

105.    Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

106.    Plaintiffs are entitled to recover reasonable attorney fees and request the attorneys' fees be awarded.

## JURY DEMAND

107.    Plaintiffs, individually and on behalf of the Plaintiff Class, demand a jury trial on all issues triable to a jury.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs, individually and on behalf of the Plaintiff Class, pray for the following relief:

a.    An order certifying this matter as a class action with Plaintiff as Class Representative, and designating Hughes Ellzey, LLP as lead Class Counsel.

b.    An award of actual and statutory damages for each and every negligent violation to each member of the Class pursuant to 47 U.S.C. § 227(b)(3)(B);

c.    An award of actual and statutory damages for each and every knowing and/or willful violation to each member of the Class pursuant to 47 U.S.C § 227(b)(3)(B);

d.    Injunctive relief prohibiting Defendant's conduct complained of herein, pursuant to 47 U.S.C. § 227(b)(3)(A);

e.    Pre-judgment and post-judgment interest on monetary relief;

f.    An award of reasonable attorneys' fees and court costs in this action;

g.    All other and further relief as the Court deems necessary, just, and proper.

17

Dated: November 18, 2014

Respectfully submitted,

s/ Douglas M. Werman
One of the Attorneys for Plaintiff

W. Craft Hughes-- craft@hughesellzey.com
Texas Bar No. 24046123
Jarrett L. Ellzey--jarrett@hughesellzey.com
Texas Bar No. 24040864
Brian B. Kilpatrick-- brian@hughesellzey.com
Texas Bar No. 24074533
Hughes Ellzey, LLP
2700 Post Oak Blvd., Ste. 1120
Galleria Tower I
Houston, TX 77056
Phone: (713) 554-2377
Fax: (888) 995-3335
*(Pro Hac Vice Applications Pending)*

Douglas M. Werman—dwerman@flsalaw.com
Maureen A. Salas –msalaes@flsalaw.com
Sarah J. Arendt –sarendt@flsalaw.com
Zachary C. Flowerree—zflowerree@flsalaw.com
Werman Salas P.C.
77 West Washington, Suite 1402
Chicago, Illinois 60602
312-419-1008

ATTORNEYS FOR PLAINTIFFS
AND THE PROPOSED CLASS